## JOSEPH BALL and DAVID NIVIN, defendants below, v. JOHN MORTON and JOSEPH TATNAL, plaintiffs below.

High Court of Errors and Appeals. January 12, 1816.

*Ridgely's Notebook I, 1.*

*Vandyke* for plaintiffs in error. *Read* and *Rodney* for defendants.

The Record returned was as follows:

John Morton and Joseph Tatnal
*v.*
Maxwell Bines, Joseph Ball, David Nivin and Joseph Israel.

Trespass on the case. December Term, 1800. Summoned, continued to December, 1802.

Common Pleas. December, 1802. This suit is by consent in lieu of *scire facias* for recognizance, dated December 11, 1799. First count for money had and received to the use of plaintiffs on a judgment obtained by them against Robert Haughey for £1299.3.10¾ dated October 13, 1786, against the defendant Bines as sheriff, and the other defendants as his securities, in consequence of a sale made by said sheriff of the lands of Robert Haughey, upon an execution against the administrator *cum testamento annexo* of said R. Haugh-

274

ey, at the suit of John Stockton upon a judgment against said administrator dated January 21, 1794. *C. A. Rodney,* attorney for plaintiff.

([NOTE.] The judgment of Morton and Tatnal, I presume, was prior to Stockton's, and that therefore they claimed the proceeds of sale.)

Plea. *Non assumpsit* and payment with leave. Trial and verdict for plaintiff for £1483.2.6, subject to the opinion of the court on case stated by the parties and filed as *narratio,* which is in the following words, to wit:

Morton and Tatnal

*v.*

Bines *et al.*

Court of Common Pleas, December 1802.

Upon the trial of this cause it is agreed by the counsel upon both sides, that the verdict of the jury, if for plaintiff, shall be subject to the opinion of the Court upon the facts to be stated by counsel; and in case of their differing, by the court, upon the ground of which the defendants' counsel prayed the opinion of the Court, upon the right of the plaintiffs to recover. And it is agreed that in case the opinion of the Court upon the facts stated should be in favor of the defendants, that the judgment of *non prosequitur* be entered; and, in case it be in favor of plaintiff, that the said case shall be considered as part of the record, the defendants accordingly have the benefit of a writ of error. *C. A. Rodney* for plaintiff. *J. A. Bayard* for defendant. December 21, 1802.

([NOTE.] This case never was stated. Some disagreement of counsel prevented it, which made a new trial necessary. Whereupon the defendant pleaded *de novo,* and a new trial was had, as immediately below appears.)

Continued May, 1803. May, 1806, defendant plead *de novo,* payment with leave etc. May 23, 1807, defendants plead *non assumpsit,* replications and issues. The death of Maxwell Bines suggested and admitted. Trial and verdict for plaintiffs for £1737.4.4. Judgment.

The record of the executor, Stockton, against Francis Haughey was annexed to the record returned in this cause as follows:

John Stockton

*v.*

Francis Haughey, Administrator *c. t. a.* of Robert Haughey.

*Venditioni exponas,* tested November 9, 1799; returnable to April, 1800 Maxwell Bines, sheriff, returned. Sale made to Joseph Tatnal for the sum of £4000.

April 17, 1800 on motion and affidavit, rule to show cause why the sale should not be set aside, to-morrow morning at 8 o'clock, April 18, 1800. Rule made absolute.

———

John Stockton

*v.*

Francis Haughey, Administrator *c. t. a.* of Robert Haughey.

November Term, 1800. *Alias venditioni exponas* to late Sheriff Bines, who returns sale made. This writ cannot be found on the files of said court. On the original entering docket the writ is entered *alias venditioni exponas* to late Sheriff Bines, delivered to Sheriff Bines October 20th.

The following errors were assigned in this cause:

1. That by the record and proceedings aforesaid it appears that the said action of the plaintiff in the court below was brought to recover from the defendants in the court below money alleged to have been levied and received by said Maxwell Bines in the same record mentioned under execution process issued to him from the Supreme Court in and for New Castle County, after the expiration of his office of sheriff, for which the said Joseph Ball, David Nivin, and Joseph Israel were not in law liable to answer to said John Morton and Joseph Tatnal.

2. For that it appears by the said record and proceedings that the said suit was *in lieu* of a writ of *scire facias* upon a recognizance given by the said Maxwell Bines as sheriff of New Castle County, dated December 11, 1799, to recover money alleged to have been had and received by said Maxwell Bines to the use of said plaintiffs (below) on a judgment obtained by them against Robert Haughey for the sum of £1299.3.10¾, and dated October 13, 1816, against the said (then) defendant (in the court below) Bines, sheriff, and the other defendants (below) as his sureties, in consequence of a sale, made by the said Bines of the lands of said Robert Haughey upon an execution against the said administrators *cum testamento annexo* of said Robert Haughey at the suit of John Stockton upon a judgment against said administrator, dated January 21, 1794, for which money so claimed

276

in the said action, the said Joseph Ball, David Nivin, and Joseph Israel were not by the law of the land liable, nor in any manner bound to answer, inasmuch as the writ of execution aforesaid, under which the said lands were sold, was issued to the said Maxwell Bines as late sheriff, and after the expiration of his said office of sheriff.

3. For that no such action as that which was brought by said Morton and Tatnal against the defendants below could be maintained, etc.

4. For that it does not appear that any declaration was filed in said cause.

5. For that it does not appear that any sufficient declaration was filed in said cause.

6. For that it does not appear that any writ of *venire facias* for summoning a jury to try the issues between the parties was issued in said cause.

7. General errors.

August 2, 1814. Present: RIDGELY, CHANCELLOR, JOHNS, Chief Justice, COOPER of Sussex, and DAVIS, Justices of the Supreme Court, and HALL, Justice of the Court of Common Pleas.

*Read,* for the defendant in error, moved for a rule on plaintiff in error to show cause why the record of the writs of execution of John Stockton against Robert Haughey's Administrator should not be stricken out of the record here returned. The rule was laid, *Mr. Vandyke,* for plaintiff in error, having made some slight objection.

*Mr. Rodney,* for the defendant in error, states the suit. The record of the suit, *Stockton v. Haughey's Administrator,* is no part of the record, *Morton and Tatnal v. Ball et al.* It may have been in evidence but it does not appear on the record. It is attached by the party.

*Mr. Vandyke* for plaintiff in error. This is an anomalous case. If plaintiff below has advantage of his agreement, so should defendant. The declaration on the sheriff's recognizance would have set forth Stockton's judgment, and all the executions, and that under which the sale was made. Here the case stated refers to the judgment of Stockton; and therefore the record referred to by the case stated makes a part of the record. All the proceedings of Stockton make part of plaintiff's case, and ought to be brought before this Court. We shall be entrapped by our agreement if we have not all the case proposed to be made by the statement. We bring up only such as is part of the record mentioned in the substituted *narratio* making part of his case.

The plaintiff below had no claim but on the sale made by Bines on Stockton's executors.

*Mr. Read* for defendants in error. The only irregularity is attaching to this record the record of *Stockton v. Haughey's Administrator*. We deny that any case was stated. The case in the court below was put in its present form by the counsel on both sides. The *pro-narratio* was agreed to. The proceeding of Stockton was evidence. The second trial was had because no case was stated. The Court can take notice of nothing but what appears in the record of *Morton and Tatnal v. Bines*. If a *scire facias* had issued on the recognizance, the suit of *Stockton v. Haughey* would not have made part of the *scire facias*. These proceedings of Stockton make no part of the record.

*Mr. Rodney*. The *pro-narratio* is instead of a regular declaration. Case stated would not be part of the record.

PER CURIAM, unanimously. The record of *Stockton v. Haughey's Administrator* is made part of the case in the statement *pro-narratio* of the plaintiffs below. They say that Bines and his sureties were liable, in consequence of a sale made by Bines of the lands of Haughey on Stockton's judgment. There as plaintiffs below have referred to, and stated this judgment, and the proceeding of Stockton, they have spread it on the record; they make it part of their case, and consequently it comes properly before this Court, just as if they had recited the whole of it. It cannot be stricken out of the record. The rule must be discharged.

August 8, 1815.

*Rogers,* for the defendants in error, read to the Court an affidavit made by William Poole, stating a compromise, by the parties before writ of error brought, by which it appears that the plaintiffs below (defendants here) received satisfaction of this judgment, though a less sum was paid than the plaintiffs below were entitled to by the judgment. He then moved that this writ of error should be dismissed, and argued that the verdict and judgment were obtained in 1807; the compromise was made June 2, 1809; from this delay, it is presumed that an arrangement was made. Plaintiffs in error took a bill of exceptions. The compromise was made to prevent the prosecution of a writ of error. No bill of exceptions was sent to this Court. It had been placed in the hands of the Chief Justice of Common Pleas. He had been informed of the compromise. The bill of exceptions was mislaid. This compromise concludes the parties from prosecuting a writ of error. This equitable defence could not be placed on the records of this Court. A release might be proved in this

Court. The compromise embraced in principle a release. This, by analogy, is the same as a release.

Cowp. 37, *Jones v. Randal et al.,* action on wager whether a decree of Chancery would be reversed on appeal to House of Lords. Decree reversed. Action on wager; wager foundation of the suit; judgment. So in this case if wager about suit be sound according to principle, so compromise is proper. Uncertain what the decision of court of error would be. Compromise predicated on this uncertainty. The parties intended to terminate the suit. Peake Ev. 12, offer to pay a sum to buy peace, not allowed to be given in evidence. 1 H.Bl. 21, defendants having agreed not to bring writ of error, not allowed to bring such writ, though manifest error. This was an agreement on record, allowance of writ of error stayed in the court below. Stronger for this court to interfere and arrest the writ of error. Two years had elapsed after the verdict before the compromise. 3 Burr. 1256, part of the rule not to file bill. *Rex v. Wheeler.* Case referred. Party agreed not to file bill in Chancery. Award and judgment. Defendant brought bill in Chancery. Attachment against party for bringing bill in Chancery. The compromise was made after judgment, out of court, to terminate the case and prevent a writ of error. We then could not apply to the court below. Suit was done there. 1 Binn. 75, Pennsylvania case. That court takes notice of an agreement made out of court, on a writ of error to Common Pleas of Chester. Amendment of writ of error on agreement of the attorneys below, not on record. Andr. 229, Lord Hardwicke. Decree by consent of counsel. No appeal. Here there was a consent that judgment should stand, proved by payment of the money by the parties. Here a part only of the money was paid. If the whole money had been paid without any agreement or understanding, but merely to pay the money, that we do not say should prevent a writ of error. This was paid by way of compromise, a less sum, bill of exception depending. We took a less sum. We now cannot in any way recover our whole debt, because we took in satisfaction; but if they are allowed to prosecute a writ of error, they have a chance to get rid of the whole sum. If this court allows them to proceed, the agreement is rendered null on one side, though binding on the other. The loss of the bill of exception can be accounted for only on ground of compromise.

*Vandyke* for plaintiff in error. This is an application to dismiss the writ of error. No rule to show cause why the writ should not be dismissed. This application is made on affidavit, on matter *in pais,* not on record. Plaintiff in error should be heard, that is, allowed to state his facts, to be heard by his proofs. This is a

matter of surprise. I know nothing about it. I was no party nor agent in the compromise. The court certainly will not dismiss this writ on this *ex parte* affidavit.

PER CURIAM. Let the affidavit be filed and a rule laid to show cause why this writ of error should not be dismissed. And leave given to file affidavits on the part of plaintiff in error.

### January, 1816.

At an adjourned court the rule laid at August last came on to be argued. Present: RIDGELY, JOHNS, WARNER, WAY, and DAVIS. No affidavits were filed according to the leave given.

*Rodney,* for defendant in error, reads Poole's affidavit. If judgment below should be affirmed, we cannot recover the sum we gave up on the compromise which was $1000. And yet if judgment be reversed, they would recover the sum paid. We cannot even buy peace, if they can proceed. The debt was compromised. 1 H.Bl. 21, (cited by *Rogers* in his argument last August). This compromise amounts to a release of error. Amb. 229, no appeal will lay to a decree given by consent.

*Vandyke* for plaintiff in error. This question must be tried according to law. If the defendants have anything like a release, they must plead it. This motion is founded on an *ex parte* affidavit. We have a right to the writ of error. If anything is wrong in law, the Court will give redress. If any fact releases defendants in error, let them plead it. Admitting the affidavit to be true, yet the Court are not Chancellors. They are to decide on law. This money was recovered from sureties on a false judgment. On a judgment which this Court in a like case said was erroneous. The compromise was under a mistake, we paid them when we were not bound to pay them a cent.

*Read* for defendants in error. This is not to be pleaded as a release, nor in abatement. It is an application in a summary way, made on the foundation of a compromise, which compromise operates so as to preclude them from bringing a writ of error. If they are precluded from writ of error, it is by the act of plaintiffs in error, by their making a compromise. Compromise made after the judgment below. The application is made here as in other cases of summary applications; by affidavits and counter-affidavits. The affidavit of Poole is now to be taken as true, no counter-affidavit being filed. The facts stated amount to a compromise. The defendants in error (plaintiffs below) agreed to take less than they were entitled to, a matter of compromise to avoid coming into this court. Plaintiffs below took a less sum

merely to conclude the matters. They were entitled to a much larger sum, and accepted the money paid to avoid coming into this court. Nothing but the compromise could have induced them to accept a less sum than that recovered. The only benefit plaintiffs below could have was to put an end to the case by the not bringing a writ of error. This Court could not sustain a writ of error in violation of an agreement. An agreement *in pais* not to bring a writ of error would enable this court to lay their hands on the agreement and stop the prosecution of the writ of error.

CHANCELLOR RIDGELY. The payment of the money is no proof, of itself, of any agreement not to bring a writ of error. The defendants below (plaintiffs here) were bound to pay the money or give bail on a writ of error. This is not like the cases cited of agreements not to bring writ of error, entered on record and making parts of the cases. There the court might very well judge of the effect of such agreements, but here a release or compromise is not admitted and is rather a matter of inference than an express agreement. Whatever it is, it is a fact to be collected from circumstances which occurred at the time of the transaction, and not from any positive engagement either verbally or in writing. I avoid intimating any opinion as to the facts, because as they are denied they must be decided by a jury. If it amounts to accord and satisfaction, or release of errors, it must be pleaded, and then the question upon a proper issue will be decided by a jury.

The rule must be discharged.

WARNER, Justice of the Court of Common Pleas, and DAVIS, Justice of the Supreme Court, concurred. JOHNS, Chief Justice of the Supreme Court, and WAY, Justice of the Court of Common Pleas, *contra.*

Rule discharged. . . .

[Thereafter the defendants in error pleaded release, and] no replication having been made, judgment of *non prosequitur* was entered by the opinion of CHANCELLOR RIDGELY, JOHNS, COOPER and DAVIS, Justices of the Supreme Court, in pursuance of the following rule made by this Court August 11, 1815:

It is ordered by the Court that on writs of error and appeals in civil actions, all rules of the Court entered in any such case shall, unless the same be complied with, be considered as absolute, although advantage be not taken of such rule by the adverse party or his counsel.

[NOTE.] The case which next follows, *Nivin v. the State, for the use of Field and others,* is given here as a note. The writ of

error, in the above, *Ball and Nivin v. Morton Tatnall,* was brought in consequence of the reversal of the judgment in that case, *Nivin v. the State.*